### THE SARATOGA.

#### NEW YORK & S. B. F. & S. TRANSP. CO. v. THE SARATOGA.

(District Court, S. D. New York. October 31, 1896.)

COLLISION—FERRYBOAT AND STEAMER—GOING TO THE LEFT—CONTRARY SIGNALS—NOT STOPPING.
The ferryboat W. B., coming up the North River and rounding Fort William, bound for the Battery, had the steamer S., coming down the East river, on her starboard hand; the ferryboat gave a signal of two whistles three times, and attempted to go to the left across the bows of the steamer, and starboarded; the steamer heard but one of these signals, and that after the steamer had given a signal of one whistle: *Held* (1) that the ferryboat was in fault for departing without cause from the rule of the road to keep to the right, and for attempting to cross the steamer's bow without an assenting signal; (2) that the steamer was in fault for not reversing until about the moment of collision, in violation of the statutory requirement to stop or reverse when in danger of collision, and also by Inspectors' Rule 3; and that the damages should be divided.

Butler, Notman, Joline & Mynderse, for libellant.
Cowen, Wing, Putnam & Burlingham, for the Saratoga.

BROWN, District Judge.   As the ferryboat West Brooklyn, coming from 39th Street, South Brooklyn, to the Battery, at about 1:15 P. M. of June 4, 1895, was rounding Fort William, Governor's Island, and about 300 yards distant therefrom, the ocean bound steamer Saratoga was seen coming down the East River.   They soon after came in collision, the stem of the Saratoga striking the starboard side of the ferryboat and doing considerable damage, for which the above libel was filed.

The collision was certainly inexcusable; the weather was clear; the tide slack flood; and no other vessel was sufficiently near to create any material embarrassment to either vessel.   The collision was about in the middle of the East River, between the Battery and Governor's Island.   The ferryboat on rounding Fort William took a course N. x E., heading for her slip at the battery; the steamer was heading about west, and had the ferryboat about three points on her port bow.   The steamer was the privileged vessel, and the ferryboat was bound to keep out of her way.   The ferryboat was not so near to her slip as to call for any departure from the rule of the road in order to enable the ferryboat to make her slip without difficulty; in the slack tide she could have reached her slip without trouble, and without material delay by going to the right, as was her duty to do. The ferryboat, however, gave a signal of two blasts three times, indicating that she would go to the left and cross the steamer's bow; whereas the Supervisors' Rules, as well as the Statute, required her in that situation to go to the right, under a signal of one whistle; and nothing prevented her doing so.   In accordance with her whistle she starboarded, and changed her heading a point or a point and a half to port.   At her first signal she slowed; at her second, stopped; and at her third, reversed.   Only one of these signals was heard upon the steamer, and that after the steamer had given a signal of one whistle in conformity with the rule, which it appears was not heard on the ferryboat.

1. I must hold the ferryboat in fault for departing from the rule of the road without sufficient cause; and for starboarding and attempting to cross the Saratoga's course without first receiving an assenting signal.   The E. H. Coffin, 16 Blatch. 421, Fed. Cas. No. 4,310; The Clarion, 27 Fed. 128.

2. The Saratoga must also be held in fault for not sufficiently checking her speed on hearing a signal contrary to her own blast of one whistle, under Supervising Inspectors' Rule 3.   I think the weight of evidence is that she did not reverse at all until about the moment of collision; while her log shows that it was from 3 to 4 minutes from the time her engine was stopped until it was reversed. It must have been self-evident for some little time before collision, that the ferryboat,—a large boat some 200 feet long—would be unable to avoid collision, except by some help from the Saratoga. From that moment it was the duty of the Saratoga to reverse under the 18th Rule.   I am satisfied that she unreasonably delayed reversal; and for these reasons she must also be held in fault.   The damages and costs are divided.